## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT ("Agreement") is made and entered into on and as of July 28, 2006, between BOBRICK WASHROOM EQUIPMENT, INC., a California corporation ("Bobrick"), and MIKE JAMES, an individual ("Employee").

### RECITALS

A. For a period of time prior hereto, Employee has served as the general manager of the General Accessory Manufacturing division ("Gamco" or the "Division") of Masco Corporation ("Masco"). The Division is engaged in the business of manufacturing and selling washroom accessories and toilet partitions (the "Business").

B. Concurrently herewith, Bobrick is purchasing, free and clear of all liens and liabilities, from Masco all of the assets of the Business.

C. In connection with the foregoing transactions, Bobrick desires to continue to employ Employee in the Business, and Employee desires to continue to be employed by Bobrick in the Business, on the terms and subject to the conditions set forth in this Agreement.

### TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises, covenants and agreements herein contained, the parties hereto agree as follows:

1. Employment.

    (a) Bobrick agrees to continue to employ Employee as the Operations Manager of the Business, which will be operated as a division of Bobrick known internally as the "Gamco Division". Employee will have the duties described on Exhibit A attached hereto as well as the duties, responsibilities and authority typically commensurate with such position or as may be assigned to Employee by Bobrick's executive officers.

    (b) Employee accepts such employment with Bobrick and agrees to continue to devote all of Employee's business time, energy, attention and skill to the Business, Bobrick and, if requested, Bobrick's other business operations. Employee agrees to perform his services hereunder conscientiously and to the full extent of his abilities.

    (c) Employee acknowledges that he owes a fiduciary duty of loyalty to Bobrick and the Business and that he will use his best efforts to further the





interests of the Business and Bobrick and not interfere with any of Bobrick's other business operations.

(d) Employee will continue to render his services at the Business' offices located in Durant, Oklahoma. In the event Bobrick finds it necessary to move the current location of the Business prior to the expiration of the Term (as defined in Section 2 hereof), Bobrick will make reasonable accommodations to provide a work assignment for Employee to allow him to maintain his domicile in the vicinity of Durant, Oklahoma. However, upon expiration of the Term, Bobrick shall have no obligation to continue such accommodations.

2. Term. The term ("Term") of Employee's employment under this Agreement will begin on the date hereof and end on December 31, 2007, unless sooner terminated as provided herein.

3. Compensation. In full consideration of the services to be rendered by Employee, Bobrick agrees to pay Employee the following:

3.1 Base Salary. Bobrick agrees to pay Employee a monthly base salary of $ 7,875.00, payable in accordance with Bobrick's established payroll policy and subject to customary withholding and employment taxes. This base salary will be adjusted if necessary so that Employee's net cost of medical & dental benefits under the Bobrick plans is approximately the same as it was under the Masco plans, for similar coverage. On January 1, 2007, Bobrick agrees to increase Employee's monthly base salary by four percent (4%) or such higher percentage as Bobrick determines in its sole discretion.

3.2 Bonuses. Bobrick further agrees that Employee will be eligible for the following bonuses:

(a) For the period from the date hereof through October 31, 2006 (i.e., Bobrick's fiscal year end), if Employee remains continuously employed in good standing with Bobrick from the date hereof until December 31, 2006, Bobrick agrees to pay Employee a bonus of not less than $3,000 based on the overall performance of the Business during that period, the exact amount to be determined in the sole judgment of the President of Bobrick. Such bonus shall be paid between January 1, 2007 and January 31, 2007.

(b) If Employee remains continuously employed in good standing with Bobrick from November 1, 2006 through October 31, 2007, Bobrick agrees that Employee will be entitled to a bonus of not less than $10,000 based upon the Business' achievement of certain goals and objectives to be mutually agreed upon by Bobrick and Employee prior to December 31, 2006. The exact amount of bonus to be awarded will be determined in the sole judgment of the President of Bobrick. Under no circumstances shall such bonus be affected by the performance of Bobrick's other business operations. After October 31, 2007, Bobrick agrees that Employee will be entitled to an annual bonus based on Bobrick's then current practices for paying bonuses

to other Bobrick employees in similar upper-level management positions; <u>provided, however</u>, that nothing herein shall be construed as any covenant or agreement on the part of Bobrick that there will be such future annual bonuses or, if annual bonuses for any future years are contemplated by Bobrick, that Employee will be entitled to a minimum amount of bonus for any such year.

        3.3    <u>Use of Company Vehicle.</u>    Employee may continue to use the existing company vehicle (Ford pickup truck) through December 31, 2006. This arrangement may be changed after that date at Bobrick's sole discretion.

4.    <u>Termination.</u>

        4.1    <u>Termination by Employee.</u>    Employee may voluntarily resign his position with the Business at any time upon delivery of written notice thereof to Bobrick; <u>provided, however</u>, that Employee agrees to give Bobrick at least 90 days' advance written notice of such voluntary termination of employment if possible. In the event that Employee voluntarily resigns Bobrick may accept Employee's resignation effective on the date set forth in Employee's notice or any earlier date and Bobrick shall only be required to pay Employee's then base salary through the effective date of such termination.

        4.2    <u>Termination upon Death or Disability.</u>    This Agreement shall automatically terminate upon Employee's death or permanent disability. For purposes of this Agreement, "permanent disability" means the inability of Employee to perform his normal duties and responsibilities to Bobrick in connection with the operation of the Business due to mental or physical disability for at least 20 hours per week for at least six consecutive months within any 12-month period, as determined by a physician chosen in good faith by Bobrick. In the event of Employee's death or total disability, Bobrick shall be required to pay Employee's then base salary through the date of Employee's death or permanent disability plus a ratable portion of any bonus that would have been due Employee pursuant to Section 3.2 hereof had he remained employed through the end of the bonus period in question.

        4.3    <u>Termination for Cause.</u>    Bobrick may terminate Employee's employment for "Cause" upon delivery of written notice by Bobrick to Employee, in which event Employee's employment will terminate on the date specified in such notice. For purposes of this Agreement, "Cause" means:

        (a)    Employee shall have been repeatedly intoxicated or under the influence of drugs while on the Business' premises or while performing any of his duties and responsibilities hereunder;

        (b)    Employee shall have committed or been convicted of or indicted for any crime involving violence, fraud or moral turpitude;

(c)  Employee shall have embezzled any property belonging to the Business or Bobrick or shall have willfully injured the Business or Bobrick or any of the Business' or Bobrick's tangible or intangible property;

(d)  Employee shall have committed any other dishonest act, engaged in fraudulent conduct or engaged in conduct that constitutes a violation of any laws or a breach of Employee's fiduciary duty of loyalty to the Business and Bobrick, whether such act or conduct occurred before or during Employee's employment hereunder;

(e)  Employee shall have been grossly negligent or reckless in the performance of his duties and responsibilities hereunder;

(f)  Employee shall be in material breach of this Agreement or any other agreement with Bobrick or shall have failed in any material respect to perform his duties and responsibilities hereunder after having received written notice from Bobrick specifying the nature of such material breach of material failure;

(g)  Employee shall have violated any work rule that would justify immediate dismissal under Bobrick's employment policies in effect from time-to-time; or

In the event that Bobrick terminates the Employee's employment with the Business for Cause, Bobrick's only obligation shall be to pay Employee's then base salary through the effective date of such termination and Employee shall not be entitled to any bonus pursuant to Section 3.2 hereof, whether or not such bonus shall have previously accrued in Employee's favor.

4.4  <u>Termination Without Cause</u>.  In the event Bobrick terminates Employee for any reason other than for "Cause", Bobrick agrees to continue to pay Employee, as severance benefits, an amount equal to his then base salary at the same times at which his base salary had previously been paid until the earliest to occur of: (i) the date which is one year from the date of termination; or (ii) the date which is six months from the date of termination if the Term otherwise would have expired during such six-month period.  In addition, Bobrick shall be obligated to pay Employee a ratable portion of any bonus to which the Employee would otherwise have been entitled under this Agreement calculated through the effective date of such termination other than for Cause. All payments under this Section 4.4 are expressly contingent on the Employee executing and not revoking a general release in the form prescribed by Bobrick within 60 days following Employee's termination without "Cause." If Employee signs and does not revoke the release, all payments that are not made during this 60-day period because Employee has not yet returned the signed release or because a revocation period remains outstanding shall be made, in a lump sum, no later than 75 days following the date Employee terminates employment.

5.  <u>Perquisites and Benefits</u>.  Bobrick agrees that Employee shall be entitled to participate in any and all perquisites and fringe benefits from time to time



generally afforded other Bobrick employees in similar upper-level management positions including, by way of example and not by way of limitation, health, accident, hospitalization, disability and life insurance programs, profit sharing and pension plans and other similar employee fringe benefit plans, subject in each instance to the specific terms and eligibility requirements of such plans.

6. Reimbursement of Expenses. Bobrick agrees to reimburse the Employee for all of Employee's reasonable travel, entertainment and other incidental expenses incurred in connection with the Business upon submission by Employee of such vouchers or other proof of expenditure and when approved in accordance with the practices now existing at Bobrick or in effect from time to time in the future.

7. Vacations and Holidays. Bobrick agrees that Employee shall be entitled to vacation periods and holidays generally afforded other Bobrick employees in similar upper-level management positions, during which vacation periods and holidays Bobrick agrees to continue to pay Employee's base salary in full.

8. Confidentiality and Nondisclosure.

8.1 Definition of Confidential Information. For purposes of this Agreement, the term "Confidential Information" means any information not generally known outside of the Business or Bobrick or information entrusted to the Business or Bobrick by third parties, and includes information known to Employee as confidential or secret or which Employee shall have reason to know or reasonably should know is confidential or secret. This information may relate, for example, to the Business' business or marketing plans, computer programs, research, development, purchases, accounting, marketing, costs, profits, sales, products, personnel, pricing policies and other business affairs, methods or information not readily available to the public, and plans for future development of the Business. This information may be contained in material such as data reports, agreements, correspondence, customer lists (written or unwritten), supplier lists or specifications or may be in the nature of, or consist of, unknown knowledge, techniques, processes, practices or know-how.

8.2 Nondisclosure of Confidential Information. Employee acknowledges that, during Employee's employment with the Business, whether pursuant to this employment with Gamco or under this Agreement, Employee may have been given access to or become acquainted with, or may hereafter be given access to or become acquainted with, Confidential Information relating to the Business or Bobrick. Employee agrees that such Confidential Information is of great value to the Business and Bobrick and agrees not to use or disclose any such Confidential Information in any manner during Employee's employment with Bobrick, or after such employment, without Bobrick's prior written consent (other than as expressly required by Bobrick in performing Employee's duties for the Business). Employee further agrees that all Confidential Information, documents or other materials relating to the Business, whether prepared or conceived by Employee during Employee's employment in the Business or which may be in Employee's possession or control, are the Business' and Bobrick's sole and exclusive property, and may be removed from the Business' premises only if



permitted by Bobrick in accordance with its rules and regulations. Employee agrees to immediately return all confidential materials to Bobrick when no longer required in order for Employee to perform Employee's services on behalf of the Business, when Employee is terminated or whenever the Bobrick may otherwise require.

      8.3 No Competitive Employment. Employee shall not: (i) plan for, acquire any substantial financial interest in, or perform any services for any competitive entity not affiliated with the Business or Bobrick while employed by Bobrick; (ii) employ, attempt to employ or solicit for employment by others, any of the Business' or Bobrick's employees while employed by Bobrick and for a period of three (3) years thereafter; (iii) solicit, or cause to be solicited, any of the Business' customers with respect to the sale of products which are competitive with those of the Business while employed by Bobrick and for a period of three (3) years thereafter; or (iv) solicit, cause to be solicited, or accept the disclosure of any Confidential Information for any purpose whatsoever not expressly authorized by Bobrick.

      8.4 Injunctive Relief. Employee acknowledges that a breach by Employee of any of the provisions of this Section 8 will cause the Business and Bobrick great and irreparable harm and that Bobrick shall be entitled to injunctive and other equitable relief to prevent a breach or threatened breach of any provision hereof, in addition to any other remedies Bobrick may have, and that the provisions of this Section 8 shall be specifically enforceable against Employee in accordance with its terms. Nothing contained herein shall prohibit Employee from becoming employed by a competitor of the Business subsequent to the termination of his employment by Bobrick so long as Employee has not violated the provisions of this Section 8.

      8.5 Former Employers. Employee represents and warrants that he is not subject to any employment, confidentiality, or other agreement or restriction that would prevent Employee from fully satisfying his duties under this Agreement or that would be violated if he did so. Employee will indemnify and hold Bobrick harmless from any liabilities, including defense costs, it may incur because Employee is alleged to have broken any of these promises or improperly revealed or used such proprietary information or to have threatened to do so, or if a former employer challenges Employee's entering into this Agreement or rendering services pursuant to it.

      8.6 Return of Information. When Employee's employment with Bobrick ends, Employee promises to promptly deliver to Bobrick all documents, data, drawings, manuals, letters, notes, reports, electronic mail, recordings, and copies thereof, of or pertaining to it or any of its affiliates in Employee's possession or control. In addition, during Employee's employment with Bobrick and thereafter, Employee agrees to meet with Bobrick personnel and answer any question they may have related to Bobrick or its affiliates.

      9. Systems, Processes and Inventions. Employee agrees that, other than items which Employee currently owns and possesses which are listed in Exhibit B attached hereto, any and all inventions, systems and processes developed by Employee, whether independently or with the assistance of others, which relate to the products of the



Business or actual or demonstrably anticipated research or development which relate to the products of the Business, or which result from any work performed by Employee for the Business, are the sole property of the Business and Bobrick, and that Employee shall immediately assign or offer to assign all of Employee's right, title or interest in and to such systems, processes or inventions to Bobrick and, upon request, shall assist Bobrick in any manner whatsoever in obtaining patents, trademarks or copyrights for such inventions, systems and processes. If any invention, system or process is described in a patent, trademark or copyright application or disclosed to third parties by Employee within one (1) year after the termination of this Agreement and which relates to the then-existing reasonably anticipated business, research or development of the Business, it shall be presumed that such invention, system or process was conceived during Employee's employment in the Business and that such invention, system or process shall belong to Bobrick unless proved by Employee to have been conceived following the termination of Employee's employment with Bobrick.

      10.    <u>General Provisions</u>.

          10.1   <u>Governing Law</u>. This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the internal laws, and not the laws pertaining to conflicts or choice of laws, of the State of Oklahoma applicable to agreements made and to be performed wholly within the State of Oklahoma.

          10.2   <u>Notices</u>. All notices, requests, demands and other communications called for or contemplated hereunder shall be in writing and shall be deemed to have been duly given when: (a) personally delivered; (b) three (3) days after having been mailed by United States certified mail, postage prepaid, return receipt requested; (c) two (2) days following delivery to an overnight courier service properly addressed to the receiving party and confirmed as having been delivered by such overnight courier service; or (d) upon acknowledgment of facsimile transmission immediately following correct dispatch. All such notices, requests, demand and other communications shall be addressed to the parties at the following addresses, or at such other addresses as either party may designate by written notice in like manner to the other party:

| | |
|---|---|
| If to Employee: | Mike James<br>22959 FM 902<br>Collinsville, Texas 76233<br>Telephone: 903-429-3023 |
| If to Bobrick: | Bobrick Washroom Equipment, Inc.<br>11611 Hart Street<br>North Hollywood, CA 91605<br>Attn: Mark S. Louchheim, President,<br>and Douglas F. Morton, Senior Vice<br>President-Corporate Development<br>Facsimile: (818) 503-1435 |

|  |  |
|---|---|
| If to Bobrick, with a copy to: | Alexander C. McGilvray, Jr., Esq. Clark & Trevithick 800 Wilshire Boulevard 12th Floor Los Angeles, CA 90017 Facsimile: (213) 624-9441 |

10.3  **Assignment**. The rights and obligations of Bobrick under this Agreement shall inure to the benefit of Bobrick, its successors and assigns, and shall be binding upon the successors and assigns of Bobrick. This Agreement, being personal to Employee, cannot be assigned by Employee without the prior written consent of Bobrick. Any purported transfer or assignment of any of the rights or obligations hereunder by Employee in violation of the provisions of this Section 10.3 shall be void and of no force or effect.

10.4  **Entire Agreement; Amendment**. This Agreement represents the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements, understandings, discussions, negotiations and commitments of any kind. This Agreement may not be amended or supplemented, nor may any rights hereunder be waived, except in a writing signed by each of the parties.

10.5  **Validity**. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

10.6  **Arbitration of Disputes**. The parties shall arbitrate any dispute or controversy that should arise between them as to the meaning, effect, performance, enforcement or other issue in connection with, arising out of or relating to this Agreement in Dallas, Texas before a single arbitrator selected by and in accordance with the then rules of the American Arbitration Association (the "AAA"). The arbitrator appointed by the AAA shall apply Texas substantive law and Texas evidentiary law to the proceedings. The arbitrator appointed by the AAA shall have the power to grant all legal and equitable remedies and award compensatory damages provided by Texas law. The arbitrator appointed by the AAA shall prepare in writing and provide to the parties an award indicating factual findings and the reasons on which the decision is based. The arbitrator appointed by the AAA shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected for any such error. The decision made by the arbitrator appointed by the AAA may thereafter be entered in any court having jurisdiction thereof.

10.6  **Recovery of Litigation Costs**. If any arbitration proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with or arising out of any of the provisions of this Agreement, the successful or prevailing party shall be entitled to

recover his or its reasonable attorneys' fees and other costs incurred in such proceeding, in addition to any other relief to which he or it may be entitled.

    10.7 <u>Section Headings</u>.  The Section headings in this Agreement are included for convenience only, are not a part of this Agreement and shall not be used in construing it.

    10.8 <u>Failure to Close</u>.  If the Asset Purchase Agreement between Bobrick and Masco is not completed for any reason, this Agreement is null and void.  If the Asset Purchase Agreement between Bobrick and Masco is completed, but is later annulled as a result of the action of any court or governmental agency, then Bobrick's obligation to Employee shall be limited to any base salary earned as of the date of annulment plus any specific benefits accrued as of the date of annulment under the provisions of sections 5, 6 and 7 of this Agreement.  Payment of any bonuses under the provisions of section 3.2 in the case of annulment shall be strictly at the discretion of the President of Bobrick.

    IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

"Employee"           "Bobrick"

                 BOBRICK WASHROOM EQUIPMENT, INC.

_____   By: _____
Mike James            Douglas F. Morton, Sr. Vice President

## EXHIBIT A

**BOBRICK WASHROOM EQUIPMENT INC.**
**Job Description**

**Job Title:**       Operations Manager - Gamco Division
**Job Code:**        508002
**Grade:**           S -
**Reports To:**      Division Manager - Gamco Division
**FLSA Status:**     Exempt
**Location:**        Oklahoma
**Prepared By:**     Phyllis Bobb
**Prepared Date:**   July 25, 2006
**Approved By:**     Les Hicks
**Approved Date:**

**Summary**
Manages the day-to-day operations of the Oklahoma facility to obtain optimum efficiency of operations; maximize long term profitability; and ensure customer satisfaction by performing duties personally or through subordinate supervision.

**Essential Duties and Responsibilities include the following.** Other duties may be assigned.

Oversees daily operations of manufacturing, sales service, procurement, production control and administration to ensure that the division's customers are being effectively served and that the division will meet its performance objectives.

Assures that practices of the Division are consistent with Company policies, appropriate local, state and Federal regulations, and accepted business practices and standards; assures fair and consistent enforcement of company policies

Oversees company safety objectives and ensures compliance with accident prevention regulations through subordinate supervisors. Meets objectives on lost work day and recordable injuries.

Contributes to development of new processes and techniques and directs manufacturing and warehousing equipment selection, acquisition and effective utilization.

Oversees maintenance, upkeep and repair of the facilities and properties, including security and health and safety

Participates directly in the conduct of industrial and labor relations; assures fair and consistent practices and timely and objective performance feedback

Regularly monitors and reviews compliance to goals and standards and directs corrective action where appropriate.

Prepares monthly analysis on department budgets, and year-to-date budgets, identifying areas in which reductions can be made and examines areas that exceed the company guidelines.

Coaches, trains and develops subordinate managers and supervisors.

**Supervisory Responsibilities**
Manages 3 to 8 supervisors who in turn supervise 60 to 80 total employees. Areas of responsibility include Credit and Collections, banking and accounts payable, Health and Safety, Maintenance, Shipping and Receiving, Production and Inventory Control, Purchasing, Employee Relations, Sales Service, Information Systems coordination, Fabrication, Spot Weld, Assembly, Mirror Manufacturing, Partition Manufacturing and Quality Assurance. Is responsible for the overall direction, coordination and evaluation of those areas. Carries out supervisory responsibilities in accordance with the organization's policies and applicable laws. Responsibilities include interviewing, hiring and training employees; planning, assigning and directing work, appraising performance; rewarding and disciplining employees; addressing complaints and resolving problems.

**Qualification Requirements**
To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements below are representative of the knowledge, skill, and ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

**Education and/or Experience**
Bachelor Degree (BA) from 4 year college or university; or ten to fifteen years related experience and/or training; or equivalent combination of education and experience.

**Language Skills**
Ability to respond to common inquires or complaints from customers, regulatory agencies, or members of the business community. Ability to write speeches and articles for publications that conform to prescribed style and format. Ability to effectively present information to top management, public groups, and/or boards of directors.

**Reasoning Ability**
Ability to apply principles of logical or scientific thinking to a wide range of intellectual and practical problems.

**Physical Demands**
The physical demands describes here are representative of those that must be met by an employee to successfully perform the essential functions of this job.

While performing the duties of this job, the employee is frequently required to sit and talk or hear. The employee is occasionally required to stand and walk.

Specific vision abilities required by this job include close vision.

**Work Environment**
The work environment characteristics described here are representative of those an employee may encounter while performing the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

The noise level in the work environment is usually moderate.

## EXHIBIT B

**Systems, Processes & Inventions**

Employee claims ownership interest in the following:

NONE