UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL JAMES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. CIV-2009-145-RAW |
| BOBRICK WASHROOM EQUIPMENT, INC. d/b/a GAMCO, | ) ) ) |
| Defendant. | ) ) ) |

## DEFENDANT BOBRICK WASHROOM EQUIPMENT, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND BRIEF IN SUPPORT

### Introduction

Plaintiff has not upheld his end of the bargain. Plaintiff and defendant, Bobrick Washroom Equipment, Inc. d/b/a/ Gamco ("Bobrick"), explicitly agreed to resolve any claims arising out of or relating to plaintiff's employment with Bobrick through binding arbitration as outlined in an employment agreement ("Agreement) that plaintiff entered into with Bobrick on July 28, 2006. *See* Exhibit A, July 28, 2004, Employment Agreement. Despite plaintiff's acceptance of the unambiguous terms of the Agreement, plaintiff has filed the instant action alleging age discrimination, breach of contract, and tortious breach of contract. Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, Bobrick moves the Court for an order requiring plaintiff to arbitrate all claims asserted in this action, and staying all further proceedings in the action pending arbitration.

**Factual Background**

General Accessory Manufacturing Company ("GAMCO") specializes in the fabrication of commercial stainless steel restroom accessories including, but not limited to, grab bars, fold-up shower seats, towel dispensers, waste receptacles, toilet tissue holders, hand dryers, mirrors, stainless steel hardware, and soap dispensers. In 2006, Bobrick acquired GAMCO and continued to operate the facility under the trade name GAMCO. After the acquisition, Bobrick began operating GAMCO as a division on Bobrick. Bobrick has its Corporate Headquarters in North Hollywood, California and primarily services the United States and Canadian markets. Bobrick continued to employ plaintiff pursuant to the Agreement entered into on July 28, 2006, as the Operations Manager of the GAMCO Division of Bobrick. In general, plaintiff was responsible for overseeing the procurement of raw materials, manufacturing the products, selling the products, and fulfilling orders to ensure customer satisfaction. In order to document the terms and conditions of plaintiff's continued employment with Bobrick, plaintiff was asked to execute an employment agreement. See Affidavit of Daniel S. Frame, attached hereto as Exhibit B. The Agreement contained a provision which states as follows:

> The parties shall arbitrate any dispute or controversy that should arise between them as to the meaning, effect performance, enforcement *or other issue in connection with, arising out of or relating to this Agreement* in Dallas, Texas before a single arbitrator selected by and in accordance with the then rules of the American Arbitration Association (the "AAA"). The arbitrator appointed by the AAA shall apply Texas substantive law and Texas evidentiary law to the proceedings. The arbitrator appointed by the AAA shall have the power to grant all legal and equitable remedies and award compensatory damages provided by Texas law. The

>arbitrator appointed by the AAA shall prepare in writing and provide to the parties an award indicating factual findings and the reasons on which the decision is based. The arbitrator appointed by the AAA shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected for any such error. The decision made by the arbitrator appointed by the AAA may thereafter by entered in any court having jurisdiction thereof.

*See* Exhibit A, ¶ 10.6 (emphasis added).

Plaintiff signed the Agreement, and even initialed the page of the Agreement which included the paragraph in question. He then began to work for Bobrick.[1] Plaintiff filed a complaint with the Court on April 15, 2009, claiming that he suffered injuries from age discrimination, breach of contract, and tortious breach of contract because of Bobrick terminating him without cause. However, the adjudication of these claims may be made only through binding arbitration. Therefore, Bobrick requests that pursuant to 9 U.S.C. §§ 1-16, the Court order the parties to arbitrate all claims herein asserted and stay this proceeding, pending resolution of this motion and subsequent arbitration by the parties.

---

[1] Contractual rights and obligations between employers and employees may be created by written policies and procedures, like those in the Agreement signed by plaintiff and Bobrick. *Lang v. Burlington Northern R.R. Co.*, 835 F. Supp. 1104, 1106 (D. Minn. 1993). Where an employee continues employment after his employer communicates a definite condition of employment, the employee's actions manifest a clear assent to the condition and constitute consideration for the condition. *Id*. at 1107. Therefore, there is sufficient support for enforcement of the Agreement, because plaintiff continued to work for Bobrick after he acquired knowledge of the arbitration agreement.

**BRIEF IN SUPPORT – ARGUMENT AND AUTHORITIES**

## I. THE FEDERAL ARBITRATION ACT REQUIRES ARBITRATION OF PLAINTIFF'S CLAIMS

### A. The Federal Arbitration Act's Standards for Determination of a Motion to Compel Arbitration

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") is applicable to motions to compel arbitration in Federal Court. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). The primary substantive provision of the Act provides that a written arbitration provision within a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. Under the FAA, if the Court is satisfied that the dispute is arbitrable, then it must stay the proceedings "until such arbitration has been had in accordance with the terms of the agreement." *Id*. § 3. Additionally, the FAA authorizes the Court to issue an order compelling arbitration in accordance with the terms of the agreement when one party has failed, neglected, or refused to comply with the arbitration agreement. *Id*. § 4. The Supreme Court has construed these provisions as a "congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), requiring that the Court "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The role of the Court is limited to determining whether the dispute is one that is covered by the contract. *AT&T Technologies, Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649-50 (1986). Accordingly, arbitration is allowed unless the Court can say with "positive assurance" the

arbitration clause does not cover the dispute. *Id*. "Doubts should be resolved in favor of coverage." *Id*. at 650. (citations omitted).

### B. The Arbitration Provision in the Agreement Evidences a Transaction Involving Commerce.

The binding arbitration provision at issue is governed by the FAA because the underlying transaction involved interstate commerce. 9 U.S.C. § 2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-81 (1995) (holding that arbitration agreement implicates FAA where underlying transaction "involved" interstate commerce even if the parties did not contemplate an interstate commerce connection). The Supreme Court has held that the statutory language, "contract evidencing a transaction involving commerce" is to be broadly interpreted so as to be coextensive with the congressional power to regulate under the Commerce Clause, and to be consistent with the FAA's basic purpose to put arbitration agreements on the same footing as a contract's other terms. *Allied-Bruce Terminix Cos., Inc.,* 513 U.S. at 273-75. Therefore, the "involving commerce" requirement of the FAA reaches more than actual physical interstate commerce, but also "contracts relating to interstate commerce." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401 n.7 (1967) (*quoting* H.R. Rep. No. 96, 68th Cong., 1st Sess. 1 (1924)); *see also Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1132 (finding that "involving commerce" requirement of the FAA was met where the contract was between 49 L.L.C., with a principal place of business in Illinois, and a federally recognized Indian Tribe located in Oklahoma).

When plaintiff filed the instant lawsuit, Bobrick was a global provider of washroom accessories. Bobrick had its Corporate Headquarters in North Hollywood, California. As the Operations Manager of the GAMCO Division, plaintiff was responsible for, among other duties, overseeing the procurement of raw materials, manufacturing the products, selling the products, and fulfilling orders to ensure customer satisfaction. Plaintiff's role as the Operations Manager of a multi-state business, in charge of overseeing the production and sale of Bobrick's products, is competent evidence that Bobrick's arbitration agreement is a "contract evidencing a transaction involving commerce." *Maye v. Smith Barney, Inc.*, 897 F. Supp. 100, 105 (S.D.N.Y. 1995).

### C. Plaintiff's Claims are Subject to Arbitration under The Federal Arbitration Act

In enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The Agreement that plaintiff signed states that any legal claim "in connection with, arising out of or relating to this Agreement" is subject to arbitration. *See* Exhibit A. Plaintiff's Complaint alleges that his employment was terminated in violation of the Age Discrimination in Employment Act ("ADEA") and the Oklahoma's Anti-discrimination Act. *(See* Complaint, Dkt. #2). Additionally, plaintiff alleges that Bobrick breached the employment contract and engaged in a tortious breach of contract in terminating plaintiff without cause. *Id*. Thus, plaintiff's legal claim specifically relates to the discharge of his employment, one of the several categories

covered by the Agreement. *See* Exhibit A ¶ 4. This fact alone is dispositive regarding the question of whether or not the dispute is covered by the arbitration clause in the Agreement.

Moreover, when a contract contains a broad arbitration clause, such as the clause within the Agreement, matters that touch the underlying contract should be arbitrated. *Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.13 (1985); *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000). Furthermore, "when a contract's arbitration clause is broad, the strong presumption is in favor of issues being subject to arbitration." *Brown*, 220 F.3d at 1184 (citing *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 28 (2d Cir. 1995)). In accordance with the liberal federal policy in favor of arbitration, this Court is required to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses*, 460 U.S. at 25. The arbitration agreement at issue here meets the criteria of a broad arbitration agreement and is entitled to the strong presumption that plaintiff's claims fall within its scope. *See*, *e.g.*, *Brown*, 220 F.3d at 1184 (finding that a contract clause covering claims "arising under or in connection" with the employment agreement was a broad arbitration clause).

The statutory claims within plaintiff's Complaint do not change the conclusion that all of plaintiff's claims are subject to arbitration. The Supreme Court has held that the FAA "mandates enforcement of agreements to arbitrate statutory claims," unless Congress specifically intended to prevent a statutory claim from being arbitrated. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The burden of

proof is on plaintiff to demonstrate that Congress intended to make an exception to the applicability of the FAA for claims arising under the ADEA. *Id*. at 227. If neither the statute under which the claims arise, the ADEA, nor its legislative history preclude arbitration then the claims are arbitrable. *Id*. at 225-27. Furthermore, throughout the Court's inquiry, "it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26. (internal quotations omitted).

According to the Supreme Court, "nothing in the text of the ADEA or its legislative history explicitly precludes arbitration." *Gilmer*, 500 U.S. at 27 (Enforcing arbitration of age discrimination claim).  Additionally, there are no inherent inconsistencies between the policies furthered by the ADEA and "enforcing agreements to arbitrate age discrimination claims," because plaintiff may still "vindicate [his] statutory cause of action in the arbitrable forum." *Id*. at 27-28. Therefore, plaintiff's statutory claims are also subject to arbitration under the FAA, because Congress has not evinced any intention on precluding age discrimination claims from being arbitrated.

Federal courts have put to rest "the longstanding judicial hostility to arbitration agreements" and have increasingly enforced agreements to arbitrate claims arising from employment. *See Gilmer*, 500 U.S. at 24-26.  *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932 (9th Cir. 1992) (enforcing arbitration of Title VII claims); *Bird v. Shearson Lehman/ American Express*, 926 F.2d 116 (2d Cir. 1991) (enforcing arbitration of ERISA claims). Any doubts that this Court has regarding the scope of the arbitration agreement should be resolved in favor of arbitration, because "the strong presumption in favor of

arbitrability . . . applies with even greater force when such a broad arbitration clause is at issue." *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (internal quotations omitted). *See also Zink v. Merrill Lynch v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332-34 (10th Cir. 1993) (noting that "arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage" even where the complaint involves state law claims) .

### D.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims.

The existence of a contractual agreement to arbitrate eliminates a court's jurisdiction over the subject matter of the dispute. *Baker Indus., Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 210 (3d Cir. 1985); *Samson Resource Co. v. Int'l Business Partners, Inc.*, 906 F. Supp. 624, 625 (N.D. Okla. 1995) ("If a claim is subject to arbitration, the federal courts lack subject matter jurisdiction over the claim."). According to the FAA, when a plaintiff files a lawsuit and claims in that lawsuit are subject to alternative dispute resolution, the court *must* stay the lawsuit. *See* 9 U.S.C. § 3. "[A] court is precluded from considering any issue that the parties have agreed to arbitrate." *In re Fils et Cables D'Acier de Lens*, 584 F. Supp. 240, 244 (S.D.N.Y. 1984).

Because plaintiff's claims fall within the scope of the arbitration agreement and the agreement is covered by the FAA, the Court must stay this litigation and compel plaintiff to arbitrate his claims. 9 U.S.C. § 3.

### Conclusion

Plaintiff made a bargain to arbitrate his claims and the Federal Arbitration Act, along with well established precedent, mandates that he be required to uphold his end of

the bargain. Accordingly, Bobrick respectfully requests that this Court enter an order compelling arbitration and staying all proceedings until the conclusion of arbitration.

                        Respectfully submitted,

                        s/Gayle Barrett

                        Gayle L. Barrett, OBA #10025
                        Tanya S. Bryant, OBA #20170
                        CROWE & DUNLEVY
                        A Professional Corporation
                        20 North Broadway
                        Suite 1800
                        Oklahoma City, OK 73102-8273
                        (405) 235-7700
                        (405) 239-6651 (Facsimile)
                        gayle.barrett@crowedunlevy.com
                        tanya.bryant@crowedunlevy.com
                        ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 17th day of June, 2009, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. The Court Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

Mark Hammons
Amber Hurst
HAMMONS, GOWENS & ASSOCIATES
325 Dean A. McGee
Oklahoma City, OK 73102
mark@hammonslaw.com
amber@hammonslaw.com

                        s/ Gayle L. Barrett
                        Gayle L. Barrett

1902797.03.BARRETTG